**ARKANSAS POWER & LIGHT COMPANY, System Fuels, Inc., Burlington Northern Railroad Company and Missouri Pacific Railroad Co., Petitioners,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents.**

No. 87–4504.

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1987.

J. Raymond Clark, St. Simons Island, Ga., Steve L. Riggs, House, Wallace & Jewell, Little Rock, Ark., Howard E. Sinor, Jr., Jones, Walker, Waechter, Poietevant, Carrere & Denegre, New Orleans, La., for petitioners.

Samuel M. Sipe, Jr., Washington, D.C., for Burlington Northern R. Co.

Ronald S. Flagg, Robert B. Batchelder, Louise R. Rinn, Washington, D.C., for Missouri Pacific R. Co.

John J. Powers, III, John P. Fonte, Attys., Dept. of Justice, Antitrust Div., Washington, D.C., for U.S.

Robert S. Burk, Gen. Counsel, Timm L. Abendroth, I.C.C., Washington, D.C., for I.C.C.

Before POLITZ, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Interstate Commerce Commission and two intervening railroads have moved to dismiss this agency review proceeding for lack of jurisdiction, urging that the district court has initial jurisdiction because the Commission has ordered the payment of money. For the reasons that follow, we grant the motion to dismiss.

I

In the consolidated proceeding below, the ICC ruled on three cases brought by a shipper, Arkansas Power & Light, the petitioner here. The question in each case was whether, under the ICC's rules, the rate

charged to AP & L was unreasonable. In one case, *Redfield,* the ICC found the rate unreasonable and awarded reparations to AP & L in the amount of $238,017; in *Newark,* the ICC found the rate reasonable and ordered no reparations; in *Kansas City,* the Commission found the rate unreasonable and ordered reparations of $21,-862,525.

In determining the reasonableness of the rates at issue, the ICC's discussion centered around the concept of "Stand Alone Cost," or SAC. SAC is one of several ways to test whether a rate is unreasonable, and it frames the issue as follows: "[W]hat would be the lowest rate that an efficient competitor, who could acquire the necessary capability to solicit the traffic of the complaining shipper ..., would need to charge to maintain adequate revenues." The ICC set forth the SAC approach in a 1985 ruling, *Coal Rate Guidelines, Nationwide,* 2 I.C.C.2d 520 (1985).

Estimating the SAC involves determining, among other things, (1) the assets needed by the hypothetical railroad and the price of such capital; (2) the railroad's operating costs; and (3) the share of these expenses that should be attributed to servicing the complaining shipper. In the proceedings below AP & L differed with the ICC's SAC methodology on at least two issues; first, whether actual contract bids may be used to estimate the rates of a hypothetical shipper; and second, whether in determining the capital costs of the hypothetical entrant, the ICC should extrapolate from the experience of utility companies that ship their own coal, or whether the ICC should look instead to the cost of capital historically experienced by railroads. Presumably these are the kinds of issues AP & L would ask us to address in a review proceeding.

**1.** *United States v. ICC,* 337 U.S. 426, 441–42, 69 S.Ct. 1410, 1418–19, 93 L.Ed. 1451 (1949). In that case the Supreme Court construed a predecessor to § 1336(a). Under that version of the statute, orders not involving payment of money were to be reviewed initially by three-judge courts. The statute was later revised to place this accelerated review in the court of appeals.

**2.** 337 U.S. at 442, 69 S.Ct. at 1419.

## II

### A

The jurisdictional statutes set forth a two-tiered system for appeal from ICC orders. Jurisdiction to review ICC orders resides in the court of appeals, 28 U.S.C. § 2342(5), with one exception: the district court has initial jurisdiction of orders "for the payment of money or the collection of fines, penalties, and forfeitures." 28 U.S.C. § 1336(a).

According to the Supreme Court, the purpose of this bifurcated structure is to accelerate review of cases having "national or widespread interest," rather than "local and isolated questions."[1] Most ICC orders involve the former kind of issues, such as ICC determinations of future rates. For expedience, such orders are to be reviewed first in the court of appeals. On the other hand, orders involving the payment of money tend to be important only to the immediate parties. Such orders, then, "are not of sufficient public importance to justify the accelerated judicial review procedure."[2]

The circuits disagree as to whether the court of appeals has initial jurisdiction over an ICC order which both orders payment of money *and* disposes of other more widespread issues. Some courts take a functional approach: if the case appears to be dominated by issues of wide importance, the court of appeals has initial jurisdiction even if the case contains an order of payment.[3] Other courts, including the Seventh and D.C. Circuits, find this approach too difficult to apply consistently. Instead these courts read the statute literally and draw a bright line: if there is an order of payment involved, the district court has initial jurisdiction regardless of any accompanying issues.[4]

**3.** *Island Creek Coal Sales Co. v. ICC,* 561 F.2d 1219 (6th Cir.1977); *Empire-Detroit Steel Div'n. v. ICC,* 659 F.2d 396 (3d Cir.1981).

**4.** *Pullman-Standard v. ICC,* 705 F.2d 875 (7th Cir.1983); *Field Container Corp. v. ICC,* 712 F.2d 250 (7th Cir.1983); *Consolidated Rail Corp. v. ICC,* 685 F.2d 687 (D.C.Cir.1982).

This circuit joined the latter group in *Burlington Northern R.R. v. ICC.*[5] The ICC had ordered payment of money in that case, but the appeal also contained a constitutional challenge to the underlying statute. This court chose to follow those courts that "have determined that if a petition seeks only monetary relief from the Commission, no matter how 'important' the case, it must be addressed by the district court to begin with."[6]

The court noted as well that the district court was a better forum for reviewing the intricacies of the ICC's variable cost calculations.[7] The court also stated that "the district court is best equipped to decide factual disputes, should they arise in the course of determining the merits of the railroads' constitutional claim."[8] Hence, the court found that a bright-line rule was both easier to administer and, in many cases, better suited to the relative abilities of district and appellate courts.

#### B

AP & L attempts to differentiate this proceeding from the typical application of § 1336(a) in which the ICC orders a railroad to pay reparations to one of its shippers, and the railroad seeks review of that decision. Here the petitioner is a *shipper* who seeks review of the *standards* underlying an ICC order which, rather than granting reparations, merely *failed* to award reparations in the correct amount. These differences, AP & L argues, make § 1336(a) inapplicable for two reasons, neither of which we find convincing.

First, AP & L contends that the part of the ICC's order involving payment of reparations was merely incidental; the crux of the ICC's decision was to set forth the standards for determining "rate reasonableness" through stand-alone costs. Because it only seeks review on the legal standard, and not the underlying cost calculations, AP & L argues that review lies initially in the court of appeals.

This argument has force under some of the language in *Burlington Northern.* The likely issues on appeal do not involve any findings of fact or cost calculations. A district court would be in no better position than the court of appeals to review the ICC's use of the SAC rule.

However, such an approach is out of step with the bright-line rule that this court adopted in *Burlington Northern.* The order unambiguously compels payment of reparations. The district court has initial jurisdiction, then, even though this might not be a case in which the district court's factual expertise will be utilized.

AP & L also argues that this case does not come within the district court's initial jurisdiction because the case involves an order *denying* reparations, not an order compelling reparations. The literal terms of the statute apply only to orders compelling payments. AP & L argues that it does not challenge the order in *Kansas City* (for reparations of $21 million), so no order of payment is at issue.

The first problem with this argument is that one of the cases from which AP & L does claim to appeal, *Redfield,* did result in an order of payment in the amount of $238,017.

In addition, there is strong authority for treating an order denying reparations like an order compelling reparations. The Seventh Circuit has reached this conclusion based on the Supreme Court's decision in *United States v. ICC.*[9] There the Supreme Court construed the predecessor to § 1336(a), and although the order at issue had *denied* reparations, the Supreme Court still found that the statute applied:

> The same one-judge trial and appeal procedure available for enforcement of an award order would appear to be an equally appropriate and adequate tribu-

**5.** No. 86–4257, slip op., (5th Cir. August 21, 1986).

**6.** *Id.* at 2.

**7.** *Id.* at 3.

**8.** *Id.* at 4.

**9.** 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). *See Field Container,* 712 F.2d at 254.

nal for adjudication of validity of a Commission order denying reparations. For actions to enforce Commission orders awarding reparation, and actions to challenge Commission order denying reparations, basically involve the same parties, the same disputes, the same claims for money damages, and the same statutes. We think the orders in both instances should be reviewed by the same one-judge tribunal.[10]

Although, as AP & L points out, the statutory structure has been changed since this opinion,[11] the reasoning of the Court is still valid.

AP & L also tries to distinguish *United States v. ICC* because the language of the ICC's order in this case did not indicate "denial" of reparations or a dismissal of AP & L's complaint. Instead, says AP & L, "the purpose of the proceeding was to determine maximum rates, which might or might not cause the end-result calculation of the amount to be refunded."

This is an unpersuasive distinction. AP & L contests the ICC order because the order denied part of the reparations AP & L sought. We are left, then, with an order that falls within the terms of § 1336(a).

### III

AP & L's petition for review is dismissed because the district court has initial jurisdiction under 28 U.S.C. § 1336(a). This circuit has declined to follow a purely functional reading of the statute. Hence, the district court has initial jurisdiction over an order for the payment of money regardless of the importance of other issues raised by the order or their factual simplicity. Furthermore, under Supreme Court precedent § 1336(a) applies to the ICC's decision even if it could be characterized as an order denying—rather than compelling—reparations.

---

**10.** *Id.* at 443, 69 S.Ct. at 1420.